UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| JUDITH PALLAI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: |
| | ) |
| FIRST COAST WORKFORCE | ) |
| DEVELOPMENT, INC. d/b a | ) |
| CAREERSOURCE NORTHEAST | ) |
| FLORIDA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff JUDITH PALLAI (hereinafter "Plaintiff" or "Pallai"), and files her complaint against Defendant FIRST COAST WORKFORCE DEVELOPMENT, INC. d/b a CAREERSOURCE NORTHEAST FLORIDA (hereinafter "Defendant" or "CareerSource") and in support she states the following:

## NATURE OF THE CLAIMS

1. This is an action for monetary damages, pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq*. ("ADA"); the Family and Medical Leave Act of 1996, 29 U.S.C. §§ 2601 *et seq*.; and the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 *et seq*. ("FCRA"), to redress Defendant's unlawful employment practices against Plaintiff including Defendant's unlawful discrimination and harassment against Plaintiff because of her disability and interference and retaliation with Plaintiff's lawful use of FMLA leading to her unlawful termination.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under the ADA and FMLA.

3. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## THE PARTIES

5. Plaintiff, Pallai, is a citizen of the United States, and is and was at all times material a resident of the State of Florida, residing in Duval, County, Florida.

6. Defendant, CareerSource, is a Florida Not For Profit Corporation with its principal place of business in Flemming Island, Florida located in Clay, County, Florida.

7. Defendant is an employer as defined by the laws under which this action is brought and employs the requisite number of employees.

## PROCEDURAL REQUIREMENTS

8. Plaintiff has complied with all statutory prerequisites to filing this action.

9. On or about April 29, 2019, Plaintiff dual-filed a claim with the Florida Commission on Human Relations ("FCHR") and the Equal Employment Opportunity Commission (EEOC") satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e), based on disability and retaliation.

10. Plaintiff's EEOC charge was filed within three hundred (300) days after the unlawful employment practices occurred.

11. On January 17, 2020, the EEOC issued to Plaintiff a Notice of Right to Sue, Issued Upon Request.

12. This complaint was filed within ninety (90) days Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## **FACTUAL ALLEGATIONS**

13. Plaintiff is a disabled female.

14. At all times relevant to this action Plaintiff had a hiatal hernia, rheumatoid arthritis and esophagitis, which are physical impairments within the meaning of the ADA and which Defendant regarded disabilities.

15. Plaintiff's disabilities impacted her major life activities such as breathing.

16. At all times relevant Plaintiff was a qualified individual with a disability within the meaning of the ADA.

17. In the alternative Defendant regarded Plaintiff as being disabled.

18. For close to eight- and one-half years Plaintiff worked for Defendant in a full-time capacity as a Customer Support Case Manager in Defendant's Temporary Assistance to Needy Families department.

19. Beginning in 2016/2017 Plaintiff's symptoms related to her disabilities became more and more pronounced. Plaintiff's symptoms included, but were not limited to, shortness of breath, chest pains, fatigue, and upset stomach which caused vomiting.

20. Plaintiff saw multiple doctors who misdiagnosed her and prescribed medications to treat Plaintiff for everything from fibromyalgia to heart failure to gastroesophageal reflux disease.

21. Defendant was at minimum on notice of Plaintiff's disabilities as Plaintiff's symptoms were visible and she would keep a trash can near her desk to use if she needed to vomit during the workday. To harass Plaintiff due to her disabilities, when Defendant changed insurance companies Plaintiff asked about the new coverage - instead of responding with the information Plaintiff was seeking, Linda Phinney, Vice President of Human Resources, stated "if you [Plaintiff] don't like it, you [Plaintiff] could always go to McDonalds and get a job."

22. The hostile work environment caused exacerbation of Plaintiff's disabilities and over the next two years she was hospitalized nine (9) times.

23. During this time, Plaintiff maintained the highest caseload among her peers and continued to maintain the same all while enduring constant berating from Defendant due to her disabilities. For quite some time Plaintiff maintained a caseload of approximately 200 cases while non-disabled similarly situated employees had only 100 cases and at other times Plaintiff maintained a case load of 100 cases while other non-disabled similarly situated employees had only 70.

24. Plaintiff would often speak with Jennifer Facey-Simms, District Director and Javetta Fluery, Internal Audit Manager, about her workload and request assistance but she was denied at every turn.

25. Plaintiff even reached out to Cheryl Taylor, Vice President of Operations, but Ms. Taylor would do nothing to assist Plaintiff other than scold her for acting "outside of the chain of command."

26. Defendant's actions permeated the workplace with intimidation, ridicule and insult towards Plaintiff.

27. Defendant's harassment of Plaintiff became so extreme that Plaintiff was fearful of losing her job should she miss work due to her disabilities so she would work while she was quite ill. The situation became so severe that on one occasion in or around October/November of 2018 Plaintiff experienced chest pains and difficulty breathing while at work and was taken to the hospital by ambulance after a colleague called 911.

28. Around this same time Ms. Facey-Simms harassed Plaintiff by calling her at 6:00 a.m. to "remind" Plaintiff that she was to be in another County for the day. This pre-dawn call was completely unnecessary as Plaintiff was never late and in fact she arrived to work early most days.

29. In December 2018 Plaintiff remained as a top performer. Ms. Facey-Simms summoned Plaintiff into her office and in no uncertain terms said that Plaintiff had "embarrassed the whole department because as much sick time as you [Plaintiff] had taken there was no way you [Plaintiff] could be number one unless you [Plaintiff] were falsifying hours."

30. Ms. Facey-Simms then stated that Ms. Fluery was going to audit Plaintiff's entire case load. Plaintiff had no objections as her files were well maintained.

31. Following the audit, on January 7, 2019 Defendant issued Plaintiff a write up stating Plaintiff entered hours that were not there, suggested Plaintiff omitted case notes, and further falsely accused Plaintiff of "being disrespectful to Theresa," another auditor.

32. Of note, Defendant routinely heightened its scrutiny of Plaintiff's cases prior to her evaluations in an effort to create pretext to terminate her and to target her due to her disability.

33. After the targeted and unnecessary audit, Ms. Fluery and Ms. Facey-Simms continued harassing Plaintiff when they stood in the isle in front of Plaintiff's cubicle and loudly (enough for the entire office to hear) reprimanded, humiliated, and belittled Plaintiff by accusing her of falsifying records.

34. Defendant even threatened to have an auditor sit with Plaintiff on a daily basis. The intensity and targeted nature of Defendant's actions drove Plaintiff to tears.

35. Defendant followed through with its threat to assign an auditor to sit with Plaintiff on a daily basis – all the while Plaintiff maintained her professionalism and performed her job with efficiency and precision.

36. Due to her disabilities, in February 2019 Plaintiff attempted to recertify her FMLA leave.

37. During this time Plaintiff feared an increase in discriminatory treatment and harassment as the hostile work environment continued to intensify, so she retained the undersigned counsel.

38. On February 18, 2019, Plaintiff received correspondence from Defendant indicating her FMLA leave was approved. The correspondence laid out that as of February 18, 2019 Plaintiff had 91.75 hours of FMLA remaining.

39. In March 2019, Plaintiff received an email from Defendant notifying her that she had to recertify her FMLA. Despite having the necessary FMLA documentation, Defendant interfered with Plaintiff's leave and retaliated against Plaintiff by telling her it did not have the necessary forms.

40. Accordingly, Plaintiff submitted the documents to her physician Dr. Samir Array. Dr. Array notified Plaintiff he completed the documents and faxed them back to the designated fax number.

41. Oddly, Defendant indicated to Plaintiff that she had not in fact renewed her FMLA leave and/or Defendant did not receive her renewal documents. Plaintiff reiterated to Ms. Phinney that her FMLA leave had been approved.

42. Without any warning, discussion, or follow up with Plaintiff, on March 15, 2019 Human Resources notified Plaintiff it had not received her FMLA documents and that Plaintiff now had to wait an entire year to recertify.

43. Days later, on March 5, 2019 Defendant terminated Plaintiff.

44. Plaintiff has been damaged by Defendant's illegal conduct.

45. Plaintiff has had to retain the services of the undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

### Count I: Disability Discrimination under the ADA

46. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-45 above.

47. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA. Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

48. Plaintiff was able to perform the essential functions of her job at the time of her termination.

49. Defendant is prohibited under the ADA from discriminating against Plaintiff because of her disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

50. Defendant violated the ADA by terminating and discriminating against Plaintiff based on her disability.

51. Plaintiff has been damaged by Defendant's illegal conduct.

52. Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

53. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

54. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages.

### Count II: Retaliation under the ADA

55. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-45 above.

56. Defendant intentionally retaliated against Plaintiff for engaging in protected activity, raising her concerns regarding Defendant's discriminatory actions, by terminating her employment.

57. Defendant's conduct violates the ADA.

58. Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

59. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

60. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages.

### Count III: Interference in Violation of the FMLA

61. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-45 above.

62. Plaintiff exercised or attempted to exercise her rights under the FMLA.

63. Defendant interfered with Plaintiff's lawful exercise of her FMLA rights.

64. Defendant's actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

65. Plaintiff was injured due to Defendant's willful violations of the FMLA, to which Plaintiff is entitled to legal relief.

### Count IV: Retaliation in Violation of the FMLA

66. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-45 above.

67. Defendant retaliated against Plaintiff for exercising or attempting to exercise her FMLA rights.

68. Defendant's actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

69. Plaintiff was injured due to Defendant's willful violations of the FMLA, to which Plaintiff is entitled to legal relief.

### Count V: Hostile Work Environment

70. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1-45 above.

71. Plaintiff engaged in protected activity.

72. Following Plaintiff's engagement in protected activity Defendant subjected her to unwelcomed harassment.

73. Plaintiff's protected activity was the "but for" cause of the harassment.

74. The harassment was sufficiently severe or pervasive to alter the terms of Plaintiff's employment as Plaintiff was terminated.

75. Defendant is vicariously liable for the harassment inflicted upon Plaintiff at the hands of its employees who were acting as Defendant's agents.

**Count VI: Handicap Based Discrimination in Violation of the FCRA**

76. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1-45 above.

77. Plaintiff was a qualified individual with a handicap under the meaning of the FCRA.

78. Defendant is prohibited under the FCRA from discriminating against Plaintiff because of her handicap with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

79. Defendant violated the FCRA by terminating and discriminating against Plaintiff based on her handicap.

80. Defendant intentionally discriminated against Plaintiff on the basis of her handicap.

81. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the FCRA, Plaintiff has suffered lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

82. Defendant's unlawful conduct in violation of the FCRA was outrageous, malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and or punitive damages.

## Count VII: Retaliation in Violation of the FCRA

83. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1-45 above.

84. At all times relevant to this action, Plaintiff was a qualified employee with a handicap under the FCRA.

85. Defendant intentionally retaliated against Plaintiff for engaging in protected activity.

86. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the FCRA, Plaintiff has suffered lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

87. Defendant's unlawful conduct in violation of the FCRA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of exemplary and/or punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, liquidated damages, and prejudgment interest thereon;

b) Grant Plaintiff her costs and an award of reasonable attorneys' fees (including expert fees); and

c) Award any other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:

*/s/ Gary J. Martoccio*
Gary J. Martoccio
Florida Bar No.: 99040
**Spielberger Law Group**
4890 W. Kennedy Blvd.
Suite 950
Tampa, Florida 33609
T: (800) 965-1570 ext. 106
F: (866) 580-7499
Gary.Martoccio@spielbergerlawgroup.com

*Counsel for Plaintiff*